THOMAS MULVEY, APPELLEE, V. CITY OF LINCOLN, APPEL-
LANT.

FILED JUNE 12, 1936. No. 29782.

*Loren H. Laughlin* and *H. B. Porterfield,* for appellant.

*Chambers & Holland, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and CARTER, JJ., and YEAGER, District Judge.

YEAGER, District Judge.

This is an action instituted originally by the plaintiff in his own name before the compensation commissioner against the defendant, city of Lincoln, the object and purpose of which was to secure compensation for injuries claimed to have been sustained by him growing out of and in the course of his employment as a city fireman for the city of Lincoln. An award was allowed by the compensation commissioner whereby the plaintiff was permitted to recover the sum of $15 a week from and after February 26, 1926, for a period of 300 weeks, and thereafter during life 45 per cent. of his weekly wage at the time of the accident, but not to exceed $12 a week for the remainder of his lifetime. The defendant appealed from this award to the district court where, without objection, the case proceeded with Thomas Mulvey as plaintiff by Catherine Mulvey, wife and next friend. The case was tried in the district court where a like result was obtained except that the weekly payments were to start as of June 27, 1927, and an attorney's fee of $200 was allowed for plaintiff's attorneys. From the judgment of the district court, the defendant brings the case to this court for review, setting forth fifteen assignments of error.

A review of all of the assignments of error is not necessary to a disposition of the case. An examination of the entire record presents four important questions. They are:

(1) Did the plaintiff, on February 8, 1926, receive the injury to his head claimed by him?

(2) Has the plaintiff proved by a preponderance of the

evidence that the claimed injury was an efficient cause of his claimed mental incapacity and did such evidence reasonably exclude all other efficient causes?

(3) Was the injury of such character and such nature as to incapacitate him from or obviate the necessity of giving the notice required by and within the time provided by statute?

(4) If the three previous questions must be answered favorably to plaintiff, then does a difference of the date of the commencement by the district court beyond the date fixed by the compensation commissioner amount to the reduction of award as contemplated by statute which would defeat the right of the district court to allow an attorney's fee?

Without question, plaintiff received certain injuries on the date in question, the apparently most serious injury at the time being to a finger, the nail of which was torn off. Also it is clear that he sustained an injury to his head. The injury was variously referred to as a cut or bruise, and the witness Slattery testified that he placed a bandage over the injury. Data concerning it do not appear on the records of the fire department. The head injury was doubtless considered of no particular consequence at the time. Whether this is the reason it does not appear of record or whether it was not reported is not apparent anywhere in the record. The burden of proof is upon a claimant under the workmen's compensation law to prove by a preponderance of the evidence that personal injury was caused to the employee by an accident arising out of and in the course of the employment. *Bartlett v. Eaton,* 123 Neb. 599, 243 N. W. 772; *Townsend v. Loeffelbein,* 123 Neb. 791, 244 N. W. 418; *Pensick v. Boehm,* 124 Neb. 28, 244 N. W. 923; *Kuhtnick v. Carey,* 124 Neb. 762, 248 N. W. 89; *Mullen v. City of Hastings,* 125 Neb. 172, 249 N. W. 560; *Parsons Oil Co. v. Schlitt,* 125 Neb. 223, 249 N. W. 613. The plaintiff has sustained this burden. The first question must therefore be answered in the affirmative. We must conclude, however, that plaintiff has not proved that the defendant

received notice as required by law of the receipt of the injury which plaintiff claims resulted in his mental incapacity.

The second question presents more of difficulty. For answer, it is necessary to examine the medical testimony. Dr. Rex M. Strader, called as a witness for plaintiff and a specialist in mental and nervous diseases, after testifying that in his opinion plaintiff was incompetent due to mental deterioration, testified, further, that, in the light of examinations made by him, the history of the case and a hypothesis propounded, in his opinion "the mental status, confusion and behavior at the time you mentioned just after the accident and the present condition, mental condition, was due to the accident." Dr. William H. Slattery, who was the attending physician for a long period of time, but not a specialist, testified that in his opinion the accident of February 8, 1926, was the direct cause of plaintiff's condition. The witnesses whose testimony has been referred to were called by plaintiff. Dr. Winchell McKendree Craig, a witness called by the defendant and who operated on plaintiff after examination at the Mayo clinic, in response to a question which involved a hypothesis, the history of the case and his own examination, testified as follows: "From the evidence which we have in our history and examination, it would be impossible to state definitely." Dr. D. G. Griffiths, a specialist in mental diseases and disturbances, was called as a witness for the defense and testified on direct examination that he had no opinion as to the cause of the condition of the plaintiff, after having a hypothetical question propounded to him embodying the evidence pertaining to the condition of plaintiff from the time of the accident down to the trial. On cross-examination he testified that, if, shortly after the accident, plaintiff was quite morose and was completely changed from a happy-go-lucky devil-raiser who recited poetry and had a lot of fun, such change would indicate that he had an injury there that caused mental trouble. It was his opinion that until he could no longer perform his duties as a fireman he was

mentally competent with some symptoms of incompetency; that as soon as his associates noticed that he could not tie a knot and could not carry on his work he was incompetent. He fixes April, 1927, as a date after which the plaintiff was no longer competent. Dr. W. W. Carveth was of the opinion that plaintiff was competent as long as he was able to perform the necessary duties of a city fireman. He also thought that at the time of the trial he was mentally competent. Dr. Milton F. Arnholt testified that he thought plaintiff was competent, although he was not a patient of the doctor and no hypothesis was propounded covering the pertinent facts of the case. Little or no consideration may be given to this testimony, since it depends upon very casual observation and conversation in the waiting room of the city of Lincoln clinic. This is a brief resumé of the competent evidence bearing upon the question of the causation of the mental incompetency or incapacity of the plaintiff, termed or characterized as "incompetency due to mental deterioration." There is nothing in the record beyond a bare suggestion that there was any other cause. We must, in answer to the second question therefore, conclude that the plaintiff has proved by a preponderance of the evidence that the injury sustained by him was the efficient cause of his mental incapacity or "incompetency due to mental deterioration," and that the evidence reasonably excludes all other efficient causes.

Again, the third question, requires a further and more enlarged examination of the testimony of the witnesses. The record preponderantly discloses by many witnesses a history of slight injury to the head in February, 1926, followed immediately by severe headaches, a changed attitude, moroseness, forgetfulness, occasions of irresponsibility, and, finally, early in 1927, an inability to perform simple duties of a city fireman and of course mental incompetency from that time on. The evidence is so voluminous that we shall not attempt to quote or abstract it. The evidence sufficiently discloses that since the first occurrence of incompetency it has continued to exist. We must de-

termine whether or not this evidence is sufficient to bring the case within the exception contained in section 48-133, Comp. St. 1929, and to remove it from the operation of section 48-138, Comp. St. 1929. The proof is not sufficient to sustain a claim that the defendant had the notice required by statute, and likewise it is not proved that claim was made within six months or petition filed within one year after the accident.

The evidence in this case, if it proves anything at all, and we think it does, supports the claim that plaintiff was suffering from a latent injury which was progressive in its nature. This court is committed to the rule that latent injuries, progressive in nature, entitle employee to compensation when disability is discovered to exist, and that failure to make claim within six months after the accident will not deprive the employee of his rights. *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615; *Selders v. Cornhusker Oil Co.*, 111 Neb. 300, 196 N. W. 316; *Johansen v. Union Stock Yards Co.*, 99 Neb. 328, 156 N. W. 511. It is also committed to the rule, which rule finds its source in the statute, that in the event of physical or mental incapacity it is sufficient if the claim for compensation is made within six months after the removal of such physical or mental incapacity. Comp. St. 1929, sec. 48-133; *Simon v. Cathroe Co.*, 101 Neb. 211, 162 N. W. 633.

The first manifestations of plaintiff's condition were severe headaches, which were followed by moroseness, spasms, irresponsibility and affection of ocular vision. Following these manifestations came treatment in a hospital at Lincoln, Nebraska, and a brain operation at Rochester, Minnesota. According to the evidence, the mental incapacity or "incompetency due to mental deterioration" still exists. The injury was latent, and therefore we are required to hold that this case comes within the exception provided by statute.

But one question remains. This one challenges the action of the district court in awarding an attorney's fee for plaintiff's attorney. Defendant appealed from the award

of the compensation commissioner and on the trial in the district court the time of the commencement of compensation was fixed as the 27th day of June, 1927, whereas the compensation commissioner had fixed as the date of commencement the 26th day of February, 1926. June 27, 1927, was the date when payments of regular compensation as a fireman were discontinued. The terms of the award were not otherwise changed.

This precise question seems never to have been before the court. The pertinent portion of the statute bearing on the question being a portion of section 48-125, Comp. St. 1929, as amended by the Laws of 1935 (Laws 1935, ch. 57, sec. 20) is as follows:

"In the event the employer appeals to the district court from the award of the compensation court or any judge thereof and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer."

The defendant in appealing to the district court brought about, and properly, a reduction of the award so as to relieve it from payment of compensation to plaintiff for the period beginning February 26, 1926, and ending June 27, 1927. In the light of this reduction, the district court had no authority to allow an attorney's fee. To this extent the decision of the district court is modified and in all other respects it is affirmed.

AFFIRMED AS MODIFIED.