EDWARD DONALD ZANSKI, APPELLEE, V. YELLOW CAB &
BAGGAGE COMPANY, APPELLANT.

9 N. W. (2d) 302

FILED APRIL 30, 1943.   No. 31582.

*Kennedy, Holland, DeLacy & Svoboda* and *Edwin Cassem,* for appellant.

*Anson H. Bigelow, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is a workmen's compensation case.   After hearing before one judge and a rehearing before the three judges of the compensation court, plaintiff's case was dismissed, but he appealed to the district court and was granted an award.   Defendant appeals to this court.

After careful consideration of the record we are of the opinion that the findings of fact made by the trial court are not conclusively supported by the record, and the cause is considered *de novo* as provided by section 48-174, Comp. St. Supp. 1941.   See, also, *Kucera v. Village of Prague,* 141 Neb. 180, 3 N. W. (2d) 201.

It is conceded that plaintiff is disabled by a disease called multiple sclerosis.   The question for decision is whether the disease was of traumatic origin or was aggravated thereby resulting in disability attributable to the injury.

It has long been the policy of this court to give a liberal

construction to the workmen's compensation law so that its beneficent purposes may not be thwarted by technical refinement of interpretation. *Wilson v. Brown-McDonald Co.,* 134 Neb. 211, 278 N. W. 254. The rule is, however, that the burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. A compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment. *Kaffenberger v. Iverson,* 142 Neb. 257, 5 N. W. (2d) 687; *Feeney v. City of Omaha,* 140 Neb. 497, 300 N. W. 571; *McCall v. Hamilton County Farmers Telephone Ass'n,* 135 Neb. 70, 280 N. W. 254.

The evidence discloses that plaintiff, 32 years of age at the time of trial, was a taxicab driver in the employ of defendant from January 6, 1937, until June 18, 1938. On November 18, 1937, his cab was involved in an accident, not of a serious nature, from which he came in contact with the arm rest on the driver's side and received a contusion on the left hip with some discoloration, and muscular sprain with tenderness in the lower lumbar region. There was no bone involvement or injury to the head, spine or central nervous system. Upon examination a physician gave him three electro-therapy treatments in his office, and an ointment for external application at home. On November 30, 1937, plaintiff returned to work and continued thereafter until June 18, 1938, when he quit defendant's employment to work as a furrier during the summer season. On December 27, 1938, he reentered defendant's employment. At that time a physician examined him, and, no physical disability appearing, gave approval to reemployment. He worked steadily thereafter until October 14, 1939, but claims that he had never fully recovered from the accident.

During a period of from three to six months before the latter date plaintiff's landlord, a street car conductor, a woman passenger, and others believed him intoxicated at

times. His fellow employees jokingly accused him of it. Complaints were made to his employer, who, knowing that plaintiff was not a drinking man, twice talked to him about it. The explanation of plaintiff, accepted by his employer, was that he sat in the cab so long that when he got out he was naturally a little unsteady, and "stumbled or something." The disease had typically manifested an ataxic or unsteady gait, noticed by others even before plaintiff or his wife became aware of it. His wife noticed it early in the summer of 1939 and it gradually increased. Plaintiff knew there was something wrong with his manner of walking at least six months before October 14, 1939.

On that date plaintiff had another accident, inconsequential in nature, causing the cab to sway back and forth, from which he suffered no physical injuries. He drove on, delivered a passenger, and returned to defendant's garage where he filled out an accident report. He was not permitted to return to work until he had been examined by physicians. At this examination by company physicians, an orthopedist and neurological specialists, plaintiff neither claimed nor evidenced any injury resulting from this accident. X-rays taken at that time and later were negative. It was then definitely discovered for the first time that plaintiff had multiple sclerosis in an advanced stage. Naturally he was not permitted to return to work. On October 11, 1940, thereafter he filed this claim for compensation.

Physicians and specialists in the psychiatric and neurological fields testified at the trial. Abstracts from articles by recognized authorities upon the subject appear in the record. The evidence is that multiple sclerosis is a chronic, progressive, incurable disease of the central nervous system, primarily affecting the youthful between 20 and 40 years of age. Its etiology is not definitely known and remains exclusively in the field of speculation. The disease is typically characterized by irregular remissions and exacerbations which are unpredictable and unexplainable as to time or cause. There may be a rapid, widespread, acute flaring up of symptoms, or it may be slow. No two cases

are alike. It manifests itself by impairment of coordination, clumsiness, ataxic gait, obstipation, uncertain memory, and intention of speech leading eventually to ultimate total disability.

A typical symptom, often antedating the onset of the disease several years, is an eye inflammation, retro-bulbar neuritis, with severe headache and sequential degeneration of the optic nerve, for which the evidence discloses the plaintiff was treated as early as 1930. The efficiency of his left eye had then suffered great impairment. He has since required frequent change of glasses and upon examination there is manifest a gradual degeneration of the optic nerve.

The only medical witness testifying in plaintiff's behalf, a specialist in mental and nervous diseases, does not assert that the accidents caused the disease, but says that they caused an aggravation of plaintiff's latent predisposition toward the disease, resulting in disability, not because of physical injury but because of emotional shock or reaction resulting from discouragement, insecurity, hopelessness, incapacity, and fear that he would be unable to work and support his family, after the first accident, which overwhelmed him after the second. These latter conclusions were based upon his examination of plaintiff and the history given by plaintiff. However, this history did not include important facts appearing in the evidence, unfavorable to these conclusions, which, if existent, the witness admits would affect his judgment.

Four other physicians, as eminently identified in the same fields, testify that there is no scientific proof of any relation between trauma and multiple sclerosis, either casual or otherwise, in cases similar to the one at bar. They admit there is some authority that it may have relativity in case of serious, deep injury to the physical structure of the back or head involving the brain, spinal cord or central nervous system, seat of the pathology. However, they allege these authorities to be dictum, controversial, and uncertain, all such reasoning being based on possibilities and probabilities, entirely without proof, it being more logical

to conclude, as many recognized authorities do, that the disease of multiple sclerosis is responsible for accident rather than accident for the disease.

We believe the evidence clearly establishes that trauma such as plaintiff received did not cause his multiple sclerosis, and since the evidence of traumatic aggravation of the disease is purely speculative and conjectural, based on possibilities and probabilities, we hold that claimant has no cause of action against the defendant.

REVERSED AND DISMISSED.